**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**EDDIE MCCOY, JR.**                                                                                       **PETITIONER**

**v.**                                                                                **CIVIL ACTION NO. 2:15cv120-KS-MTP**

**MARSHALL L. FISHER**                                                                              **RESPONDENT**

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the *pro se* Petition [1] of Eddie McCoy for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. After considering the submissions of the parties, the record of the state court proceedings, and the applicable law, the undersigned recommends that the Petition [1] be DENIED.

## FACTS[1] AND PROCEDURAL HISTORY

Petitioner Eddie McCoy is a post-conviction inmate currently incarcerated at the East Mississippi Correctional Facility in Meridian, Mississippi. On January 9, 2013, he was convicted of possession of a controlled substance with the intent to distribute in the Circuit Court of Forrest County, Mississippi. The next day he was sentenced as a habitual offender pursuant to Mississippi Code § 99-19-83 and received a life term of imprisonment in the custody of the Mississippi Department of Corrections.

On March 31, 2012, a confidential informant told the Hattiesburg Police Department that McCoy was selling drugs out of unit A–7 in Pineview Apartments. Upon receiving this information, officers went to the apartment for a "knock and talk." This investigative method involves a knock on the door and a request to interview the resident. Sometimes this leads to a search of the premises if the resident consents. When the officers knocked, McCoy's girlfriend,

---

[1] The facts are taken almost verbatim from McCoy's state court appeal. The only changes made are stylistic. *See McCoy v. State*, 160 So. 3d 705, 708 (Miss. Ct. App. 2014).

Chante Robinson, answered the door. Chante lived in the apartment with her mother, Cynthia Robinson, who leased the apartment. While the officers were talking with Chante, McCoy walked into the living room. Officers noticed McCoy had his hands shoved into his pockets.

When the officers asked if McCoy would speak to them, McCoy darted to the bathroom and tried to shut the door. Fearing McCoy was either retrieving a weapon or destroying evidence, the officers ran into the bathroom. They found McCoy hovered over a trash can and escorted him outside of the apartment to wait with another officer.

At this point, Cynthia and Chante gave permission to search the apartment; inside the bathroom where McCoy had fled, the officers found a bag of cocaine in the trash can. They also found a cup containing small empty baggies. In Chante's bedroom, they found a set of scales, a gun, and brass knuckles. They arrested McCoy. During the search incident to arrest, they found more than $1,200 in cash in his pocket. McCoy was later indicted for possession of 2.7 grams of cocaine with the intent to distribute.

Before trial, McCoy's counsel filed a motion to suppress the evidence found in the apartment. He argued the officers' search was illegal because the "knock and talk" was merely a pretext to get around the Fourth Amendment's warrant requirement. At the suppression hearing, the two officers who knocked on the door testified they did not believe, based on the informant's tip, they had sufficient probable cause to obtain a warrant, hence the "knock and talk." *See United States v. Jones*, 239 F.3d 716, 720 (5th Cir.2001) *709 (recognizing the "'knock and talk' strategy as a reasonable investigative tool when officers seek to gain an occupant's consent to search or when officers reasonably suspect criminal activity"); *see also Kentucky v. King*, ─── U.S. ───, 131 S.Ct. 1849, 1860, 179 L.Ed.2d 865 (2011) (recognizing law enforcement may have "entirely proper reasons" for not "seek[ing] a search warrant as soon as the bare minimum

of evidence needed to establish probable cause is acquired").

When the officers knocked, and when they were talking to Chante, exigent circumstances led them to enter the apartment. Based on McCoy's reaction, they believed he was either heading for a weapon or destroying evidence. As such, they ran after McCoy to stop him. The officers did not search the premises until Cynthia gave her written consent to search the apartment and Chante gave her verbal consent to search her bedroom.

Cynthia and Chante also testified at the hearing. Cynthia confirmed that, though the officers' presence made her nervous, she gave her consent to search "freely" because she "didn't have anything to hide." However, Chante's testimony was more equivocal. While she agreed she had let the officers in when she answered the door, she said she only gave her consent to search her bedroom because the officers threatened her. She was unwavering, however, on the fact McCoy did not stay in the apartment with her. One of the officers testified that Chante told him McCoy had been living in the apartment for several months, but Chante disagreed. She claimed she never said McCoy stayed there. McCoy's grandmother was also called to the stand. She testified that McCoy stayed with her, not Chante.

The Circuit Judge considered this testimony and concluded McCoy did not occupy the apartment with Chante and her mother. Consequently, his Fourth Amendment rights were not violated because he did not have rights in the premises at issue. The judge also found the person who did possess such rights—Cynthia—had freely consented to a search. Therefore, he denied McCoy's motion to suppress. After a trial, McCoy was convicted and sentenced as a habitual offender.

McCoy filed a direct appeal of his conviction and sentence to the Mississippi Supreme Court. He raised the following arguments through counsel:

3

1. The trial court erred in denying the motion to suppress; and

2. The evidence was insufficient to support the verdict.

McCoy raised the following arguments *pro se* in his supplemental brief:

3. Violation of the right to a speedy trial; and

4. Ineffective assistance of trial counsel.

*See* [21-4] at 43-67.

The Mississippi Court of Appeals affirmed McCoy's conviction by written opinion on October 21, 2014. *See McCoy v. State*, 160 So. 3d 705 (Miss. Ct. App. 2014), *reh'g denied* March 17, 2015 (No. 2013-KA-00198-COA). On May 8, 2015, McCoy filed *pro se* an "Application for Leave to Proceed in Trial Court" in the Mississippi Supreme Court raising the following arguments (as stated by the Petitioner):

1. Petitioner was denied his US Sixth and Fourteenth amendment constitutional right(s) to the effective assistance of counsel during pre-trial and trial proceedings; and

2. Petitioner was denied the effective assistance of counsel during his direct appeal.

On June 22, 2015, the Mississippi Supreme Court denied McCoy's application, holding that his claims failed to meet the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 686 (1984).[2]

On September 10, 2015, McCoy filed the instant Petition for Writ of Habeas Corpus. McCoy asserts the following grounds for relief (as stated by the *pro se* Petitioner):

**Ground One**: Petitioner was denied his US Sixth Amendment constitutional right to the effective assistance of counsel during pre-trial and trial proceedings.

**Ground Two**: The Petitioner was denied effective assistance of counsel during

---

[2] *See* Order [6-8]. McCoy previously filed two other applications for post-conviction relief, but those were denied as premature by the Mississippi Supreme Court, as they were filed while the McCoy's direct appeal was still pending. *See* Orders [6-5] and [6-6].

direct appeal.

**Ground Three**: Petitioner's sentence is illegal

*See* Petition [1] at 7-20.

Petitioner McCoy's third ground for relief, his illegal sentence claim, was dismissed by this Court with prejudice for his failure to exhaust state remedies. *See* Report and Recommendation [15] and Order [18]. Accordingly, this Report and Recommendation will be limited to grounds one and two.

## ANALYSIS

The Antiterrorism and Effective Death Penalty Act ("AEDPA") section 2254(d) provides that a federal court may not grant habeas relief unless the state court's adjudication of the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

The "contrary to" clause applies when the state court fails to apply a legal rule announced by the Supreme Court or reaches a result opposite to a previous decision of the Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The "unreasonable application" clause applies when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. The "unreasonable application" inquiry is based on an objective standard, and "unreasonable" does not equate with "incorrect." *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir.

2004).

Habeas corpus serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S.86, 102-03 (2011) (internal quotations omitted). A federal court does not "sit as a 'super' state supreme court" and may decide the issues presented by the habeas petition "only to the extent that federal constitutional issues are implicated." *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986).

In both remaining grounds, McCoy argues that he was provided ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court defined the standard by which an ineffective assistance of counsel claim in a habeas proceeding is to be measured. Pursuant to *Strickland*, McCoy must show that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." 466 U.S. at 687; *see also Motley v. Collins,* 18 F.3d 1223, 1226 (5th Cir. 1994) (stating that satisfaction of the standard requires a showing that counsel's acts "fell below an objective standard of reasonableness"). In order to establish a deficiency, McCoy must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. This Court's "scrutiny of counsel's performance must be highly deferential" and it must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also Moawad v. Anderson,* 143 F.3d 942, 946 (5th Cir. 1998) (observing that the court "gives great deference to counsel's assistance, strongly presuming that counsel has exercised reasonable professional judgment") (internal quotations and citations omitted).

"To meet the prejudice prong of the *Strickland* test, the defendant may not simply allege

but must 'affirmatively prove' prejudice." *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir. 1986) (citing *Celestine v. Blackburn*, 750 F.2d 353, 356 (5th Cir. 1984)). Further, McCoy must not only prove that the outcome of his trial would have been different "but for counsel's alleged errors," but must also prove that "'the result of the proceedings was fundamentally unfair or unreliable.'" *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)). An ineffective assistance of counsel claim must be stated with specificity. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990). Summarily reciting general complaints about counsel's performance without discussing their specific basis or how application of the law purportedly justifies relief does not state a claim for habeas review. *Hughes v. Dretke*, 412 F.3d 582, 597 (5th Cir. 2005); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.")

In considering McCoy's application for post-conviction relief, the Mississippi Supreme Court reviewed the claims of ineffective assistance of counsel and determined that McCoy failed to meet his burden. *See* Order [6-8]. Given that the ineffective assistance of counsel claims before this Court present a mixed question of law and fact and that *Strickland* is the "clearly established Federal law" which governs such claims, the issue in this case is "whether the Mississippi Supreme Court's decision to reject [Petitioner's] ineffective assistance claim[s] 'involved an unreasonable application' (and not merely an incorrect application) of *Strickland*." *Neal v. Puckett,* 286 F.3d 230, 236 (5th Cir. 2002).

**Ground One- Ineffective Assistance of Counsel during Pretrial and Trial Proceedings**

In ground one of his petition, McCoy alleges his trial counsel was ineffective for four different reasons. First, McCoy claims his counsel was ineffective during the suppression

7

hearing because counsel failed to elicit testimony that Cynthia Robinson was under the influence of narcotics at the time of the search when she signed the consent to search the apartment. Second, McCoy contends that trial counsel was ineffective because he failed to locate and investigate Jason Cherry, an individual he contends was present moments before law enforcement arrived at the apartment. Third, he contends, that counsel was ineffective for not seeking a dismissal of the case due to violation of his speedy trial rights. Fourth, he contends that trial counsel was ineffective during his sentencing hearing. *See* Petition [1] at 8.

### *Suppression Hearing*

McCoy claims his counsel was ineffective during the suppression hearing because counsel failed to elicit testimony that Cynthia Robinson was under the influence of narcotics at the time of the search, and thus the search was not voluntary. McCoy's counsel filed a motion to suppress the evidence found in the apartment. *See* [21-1] at 15-21. Petitioner's counsel argued that that the search was illegal because the "knock and talk" was merely pretext to get around the Fourth Amendment's warrant requirement, Cynthia Robinson's consent to search was not voluntary, and that there were no exigent circumstances to justify the search. *Id.* There was also a hearing held on the issue. *See* Transcript [21-2] at 6. At the hearing, testimony was offered that McCoy did not stay at the apartment. *See e.g. Id*. at 58 (grandmother testified that McCoy lived at her house); *Id.* at 54 (Robinson testifying that McCoy did not stay at the apartment).[3] The trial

---

[3] On direct examination, Robinson testified:
Q: When [the officers] asked you, Does [McCoy] stay at the residence with you, and does he have clothes in there, you answered what?
A: I answered he has some clothes there.
Q: Okay. What did you answer with respect to him staying there?
A: He does not stay there.
And on cross-examination, she further said:
Q: [A]m I understanding you right, it's your testimony that Eddie McCoy did not reside there?

court found that there were exigent circumstances to enter the apartment, that Robinson's consent to search was voluntary, and that McCoy did not have Fourth Amendment rights with respect to that apartment.[4] On direct appeal, the Mississippi Court of Appeals found that McCoy failed to establish that his Fourth Amendment rights were violated, and also that the search was justified for two other independent reasons: exigent circumstances and consent. *McCoy*, 160 So.3d at 707-8.

McCoy makes much of the fact that his counsel did not pursue a theory and investigate that Cynthia Robinson was on drugs following a surgery at the time she gave consent to the search of the apartment, and thus her consent was invalid. He claims that his counsel was ineffective in failing to illicit testimony that she had been on Lortab, Lyrica, Percocet, and Fioricet. He asserts that this would have resulted in evidence in the apartment being suppressed. However, this argument fails from the outset, as McCoy has not shown that he was prejudiced by his counsel's alleged failure to pursue this theory or to illicit testimony on the issue.

To prevail on his ineffective assistance of counsel claims, McCoy must not only prove that the outcome of his trial would have been different "but for counsel's alleged errors," but must also prove that "'the result of the proceedings was fundamentally unfair or unreliable.'" *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995) (*quoting Lockhart v. Fretwell*, 506 U.S. 364,

---

A: He does not. He did not stay there.
Q: He didn't stay there; he didn't receive mail there?
A: He did not receive mail there. They asked that same question. I told them no.
Q: Okay. Didn't receive mail there. So would he have the right to tell people that they couldn't come in, exclude other people from the premises?
A: He don't be there like that to even have to answer a question like that.
[21-2] at 53-55.

[4] The trial court emphasized that McCoy's lack on rights in the apartment stating that "where your argument really fails is McCoy's rights in that unit." *See* [21-2].

369 (1993)). McCoy has not shown that the outcome of the trial or suppression hearing would have changed or that the result of the proceedings was fundamentally unfair or unreliable to prevail on an ineffective assistance on counsel claim.

Even assuming Counsel did not investigate that Cynthia Robinson may have been on drugs and could have shown that her consent to the search was not valid, the trial court also ruled that McCoy did not have rights in the apartment and the Mississippi Court of Appeals affirmed this ruling stating, "Fourth Amendment rights are personal, [thus], McCoy could only invoke the exclusionary rule if *his* Fourth Amendment rights were violated. . . . [and] we agree with the trial judge that McCoy had no Fourth Amendment right to prevent a search or seizure of his girlfriend's mother's apartment." *McCoy*, 160 So. 3d at 707. The trial court and the court of appeals both found that "McCoy failed to establish he had a legitimate expectation of privacy in the apartment." *McCoy v. State*, 160 So. 3d 705, 711 (Miss. Ct. App. 2014).

As the Court ruled that McCoy did not have Fourth Amendment rights in the apartment, he has not shown that counsel's alleged failure to illicit testimony on the issue of Cynthia Robinson's consent to the search would have changed the outcome or prejudiced him. *See Rakas v. Illinois*, 439 U.S. 128, 134, 99 S. Ct. 421, 425, 58 L. Ed. 2d 387 (1978) ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. . . . [a]nd since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, [], it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections.") Because federal habeas relief is only available when a "state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court

of the United States," 28 U.S.C. 554(d)(1), the undersigned cannot find that the Mississippi Supreme Court's decision rejecting McCoy's claim for ineffective assistance of counsel was an unreasonable application of the Strickland standard.

### *Uncalled and Unquestioned Witness - Jason Cherry*

McCoy also alleges that his counsel was ineffective in not questioning a witness, Jason Cherry. "Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Sayre v. Anderson*, 238 F.3d 631, 635–36 (5th Cir. 2001)(citations omitted). For McCoy "to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) In his petition, McCoy claims that Jason Cherry was "an individual whom Petitioner advised was present moments before the arrival of law enforcement officials at the residence where Petitioner was arrested." See Petition [1] at 8. He gives no further information as to the nature or content of any testimony by this person. Accordingly, the undersigned cannot find that the Mississippi Supreme Court's decision rejecting McCoy's claim for ineffective assistance of counsel was an unreasonable application of the *Strickland* standard.

### *Speedy Trial Right*

McCoy argues that he was denied effective assistance of counsel when his trial attorney did not raise the issue of a speedy trial violation. In *Barker v. Wingo*, 407 U.S. 514 (1972), the

U.S. Supreme Court established a four-part balancing test to use in determining whether a defendant received a speedy trial within the meaning of the Sixth Amendment. *Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir.2000). The *Barker* analysis requires the Court to consider the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530. The first factor, length of the delay, serves as the triggering mechanism for the speedy trial clock. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.*

The Mississippi Court of Appeals discussed the speedy trial claim when McCoy raised it in his *pro se* supplemental direct appeal brief:

> ¶ 42. Both the United States and Mississippi Constitutions guarantee the accused the right to "a speedy and public trial." U.S. Const. amend. VI; Miss. Const. art. 3, § 26. "A formal indictment or information or an arrest—whichever first occurs—triggers" this right. *McBride v. State*, 61 So.3d 138, 142 (¶ 8) (Miss.2011) (citations omitted). Here, McCoy's March 31, 2012 arrest preceded his September 20, 2012 indictment. So for speedy-trial purposes, the clock began running on March 31, 2012. McCoy was tried on January 9, 2013—more than eights months later. And "[i]n Mississippi, a delay of more than eight months is presumptively prejudicial." *Id.* at (¶ 7). But the length of delay is only one of four factors that must be considered when a speedy-trial violation is alleged. *See id.* at (¶ 5) (*citing Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). This factor must be considered alongside the reason for delay, whether McCoy asserted his right to a speedy trial, and whether any prejudice resulted from the delay. *See id.* (listing the four-factor test from *Barker*, 407 U.S. at 530, 92 S.Ct. 2182).
>
> ¶ 43. Here, the length of delay, though presumptively prejudicial, is just barely so—only nine days over the presumptive threshold.
>
> ¶ 44. The record is silent on the reason for the delay of eight months and nine days—except it does show McCoy, who had been out on bail since his March arrest, was indicted by the grand jury in September, arraigned a month later in October, and tried three months later the following January.
>
> ¶ 45. Why there is no explanation for the delay ties into the third factor—the

assertion of right. The Mississippi Supreme Court has said that, while "[a]n accused has no duty to bring himself to trial[,] ... he does have some responsibility to assert his right to a speedy trial." Id. at 144 (¶ 20) (internal citations omitted). And the United States "Supreme Court in *Barker* emphasized 'that failure to assert the right to a speedy trial will make it difficult for a defendant to prove that he was denied a speedy trial.'" *McBride*, 61 So.3d at 144 (¶ 20) (quoting *Barker*, 407 U.S. at 532, 92 S.Ct. 2182). During the eight months and nine days between his arrest and trial, McCoy never asserted his right to a speedy trial. Nor did he seek dismissal from the trial court based on the violation of his speedy-trial rights, which would have prompted the trial court's own Barker analysis and evidentiary hearing. McCoy claims he verbally asserted his right to a speedy trial as soon as he was arrested on March 31, 2012. But there is simply nothing in the record to support this.

¶ 46. Finally, McCoy has not shown prejudice, though he has alleged it—claiming that a witness with the potential to exonerate him died during the delay. McCoy claims this man visited the apartment right before the police showed up that day and "very well may have left the alleged item(s) there in the waste basket of the bathroom/restroom." But this unidentified man's existence—let alone his death—is in no way verified from the record. Thus, McCoy has failed to establish his defense was hampered by the delay. And as McCoy was free on bail pending his trial, we find no actual prejudice by the delay.

¶ 47. According to the supreme court, "where the delay is neither intentional nor egregiously protracted, and there is an absence of actual prejudice to the defense, the balance is struck in favor of rejecting a speedy trial claim." *Johnson v. State*, 68 So.3d 1239, 1246 (¶ 22) (Miss.2011) (quoting *Stevens v. State*, 808 So.2d 908, 918 (¶ 29) (Miss.2002)). Because such is the case here, we reject McCoy's claim that his conviction should be reversed based on a violation of his right to a speedy trial.

*McCoy*, 160 So. 3d at 714–15.

McCoy does not particularly identify how his counsel was deficient on the speedy trial claim issue, only that he should have had the case dismissed. *See* [1] at 8. The facts provide no valid constitutional basis upon which counsel could have lodged an effective objection. Indeed, if his counsel were to look at the time line and make the strategic decision not to pursue a motion regarding a speedy trial claim – as the delay was only 9 days over the presumptive threshold and there was no real prejudice – it would be a reasonable decision to focus time and resources on

13

other more effective defenses. *See, e.g., Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); *see also United States v. Gibson*, 55 F.3d 173, 179 (5th Cir.1995) (attorney not required to file meritless motions). McCoy has shown no prejudice resulting from his attorney's actions. More importantly, the Mississippi Supreme Court thoroughly reviewed and addressed this issue, and the undersigned cannot find that the Mississippi Supreme Court's decision rejecting McCoy's claim of ineffective assistance of counsel for this issue was an unreasonable application of the *Strickland* standard.

### *Failure to Object to Plaintiff Being Sentenced as an Habitual Offender*

McCoy also alleges his Counsel was ineffective because he should have objected to him being sentenced as an habitual offender. McCoy argues the State's failed to provide sufficient evidence because Mississippi Law requires evidence that Petitioner "had served separate terms of one (1) year or more in any state and/or federal penal institution." *See* Petition [1] at 16.

Petitioner raised this issued before the Mississippi Supreme Court in his Application for Leave to Proceed in Trial Court and attached Motion for Post Conviction Collateral Relief [6-7] at 11. The Mississippi Supreme Court found that McCoy's claims failed to meet the standard set forth in *Strickland v. Washington*. *See* Order [6-8]. This Court cannot grant habeas relief unless it finds the state court's application of *Strickland* standard objectively unreasonable. *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

Mississippi's Habitual Offender statute provides that:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more, whether served concurrently or not, in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1)

>of such felonies shall have been a crime of violence, as defined by Section 97-3-2, shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole, probation or any other form of early release from actual physical custody within the Department of Corrections.

Miss. Code. Ann. § 99-19-83.

McCoy was convicted of robbery in 2002, and sentenced to serve three years, and convicted of sale of a controlled substance in 2011, and sentenced to serve two years. In both cases, he was sentenced to 15 years, but the remainder of the sentences were suspended. McCoy acknowledged that he was previously convicted of these two felonies at the sentencing hearing. The sentencing order in this case reveals that the judge took into consideration McCoy's previous felonies when sentencing him. *See* Order [21-4] at 32-33.[5] McCoy points to the transcript of the sentencing hearing and submits there was not sufficient evidence to sentence him as an habitual offender because this evidence did not contain the lengths of his incarcerations; thus, his counsel was ineffective for failing to object. *See* Petition [1] at 14.

However, in his argument, McCoy omits that there was a hearing to clarify his sentence the next day because he stated that he did not understand his sentence. *See* [21-3] at 130. At the subsequent hearing, a "pen pack" was also entered into evidence for proof of Plaintiff's habitual offender status. *See* Transcript [21-3] at 134. "Pen packs" or "penitentiary packets" are the records maintained on inmates sentenced to the custody of the Mississippi Department of Corrections, and certified copies of pen packs suffice as competent evidence of habitual offender status and include prison discharge dates. *Jasper v. State*, 858 So. 2d 149, 152 (Miss. App. 2003); *Dixon v. State*, 812 So. 2d 225, 231 (Miss. App. 2001); *Hutchins v. State*, 165 So. 3d 478,

---

[5] *See also* Motion to Amend Indictment and Notice of Prior Convictions [21-1] at 22-33; Order Sustaining Motion to Amend Indictment [21-1] at 36.

480 (Miss. Ct. App. 2015); *Sumrell v. Mississippi*, 403 F. App'x 959, 962 (5th Cir. 2010) (describing contents of pen pack). Plaintiff's counsel objected when the state offered the pen pack as evidence. *See* Transcript [21-3] at 132-134. Defense counsel also stated, ". . . I [] counseled with my client and informed my client that from my understanding of his pen pack information . . .[that] would make him eligible for the life 83 habitual. . . ." *Id*. Plaintiff does not argue that this pen pack did not contain sufficient evidence for him to be sentenced as an habitual offender or that he is not actually an habitual offender.

      The undersigned finds no unreasonable application of *Strickland* to McCoy's case by the Mississippi Supreme Court. The record before the Court reveals no basis for finding either prong of the *Strickland* test established or that Mississippi Supreme Court unreasonably applied them. As for the first prong, the record indicates that counsel actually objected to additional evidence of Petitioner's habitual offender status being introduced at the subsequent hearing, contradicting Plaintiff's argument. Even if Counsel erred by not objecting during the first hearing, Petitioner has not demonstrated any such failure meets the prejudice prong. Petitioner has not shown or ever alleged that he actually fails to meet the requirements of habitual offender status.

      To prove prejudice, the second prong of the test, McCoy is required to demonstrate that it is reasonably probable that the result of the proceedings would have been different but for counsel's deficient performance and that counsel's performance rendered the result fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir.1995) cert. denied, 516 U.S. 1005 (1995); *Bates*, 805 F.2d at 578. "[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart v. Fretwell*, 506 U.S. 364 (1993). McCoy has not demonstrated that based on counsel's actions or inactions there is a reasonable probability of a

different result or that the sentencing was fundamentally unfair. *Vuong*, 62 F.3d at 685 (citations omitted). He has not come forward with any evidence, much less alleged, that he did not actually meet habitual offender status. Additionally, he has not shown the Mississippi Supreme Court's decision on this issue was an unreasonable application of the *Strickland* standard. Accordingly, the undersigned cannot find that the Mississippi Supreme Court's decision rejecting McCoy's claim of ineffective assistance of counsel was an unreasonable application of the *Strickland* standard.

**Ground Two- Ineffective Assistance of Appellate Counsel**

McCoy contends that appellate counsel was ineffective for failing to raise the issue of ineffective assistance of trial counsel and the issue of his sentencing. *See* [1] at 18. The Mississippi Court of Appeals dismissed without prejudice the claims that trial counsel was deficient after McCoy raised the issue *pro se*, leaving open the possibility to make these same assertions in a motion for post-conviction relief. *See McCoy v. State*, 160 So. 3d 705, 716 (Miss. Ct. App. 2014).

In reviewing the performance of appellate counsel, the two-pronged test of *Strickland* is likewise applied. *See Evitts v. Lucey*, 469 U.S. 387, 397-399 (1985). McCoy can show no prejudice from appellate counsel's alleged failure to raise these issues, as McCoy was free to raise the issues in a motion for post-conviction relief.

Moreover, as discussed above, McCoy's claims regarding ineffective assistance of trial counsel are without merit. *See, supra*, discussion ground one. The failure to raise a meritless claim on appeal is not error. *See Mayabb v. Johnson*, 168 F. 3d 863, 869 (5th Cir. 1999) (because there was no error at trial, by extension, there is no error at the appellate level for failure to assert such an error and resulting prejudice); *Ricalday v. Procunier*, 736 F.2d 203, 208 (5th Cir.

1984)("Because the error at the appellate stage stemmed from the error at trial, if there was no prejudice from the trial error, there was also no prejudice from the appellate error.") Accordingly, the undersigned cannot find that the Mississippi Supreme Court's decision rejecting McCoy's claim of ineffective assistance of appeal counsel was an unreasonable application of the *Strickland* standard.

## RECOMMENDATION

The undersigned recommends that the relief sought in McCoy's Petition [1] be denied and that the Petition be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 8th day of February, 2018.

                                        s/ Michael T. Parker
                                        United States Magistrate Judge